Good morning, and may it please the Court. My name is Adam Doyle, on behalf of Appellant Jose Fermin Davalos-Martinez. Your Honor, this case is about two deportations, and although they are separate, they are nonetheless substantially intertwined. And the reason that that's important is because we have one illegal deportation from 1993, in which Mr. Davalos-Martinez could have gotten relief via Section 212H, Waiver of Immiscibility. He was not advised of that potential, and thus his due process rights were violated. Mr. Davalos was then again deported in 2002, and we argue that that deportation, although it was a separate deportation and not officially a reinstatement, was affected or was a result of the illegal 1993 deportation. And I'd like to take up a little further that 1993 deportation to begin with, because what has happened here is that the government did not wish to argue the illegality of the 1993 deportation in the District Court. Rather, in its pleadings and in front of the District Court, the government chose to portray that issue as moot. Well, because they had a cleaner removal order upon which to base the indictment, and that's the 2002 removal order, which, as you pointed out, was not a reinstatement. So what is the linkage between the 2002 and the earlier 1993 deportation removal order? Well, the linkage here, Your Honor, and the fact that it's not a reinstatement is not dispositive in this case, because really it might as well be a reinstatement because it was the result of that 1993 deportation. Without that 1993 deportation, which was illegal, there would not have been a 2002 deportation because Mr. Davalos Martinez would not have been deported. He would have been advised of his eligibility for 212H relief, which he then could have pursued. And the 2002 deportation was not a result of an aggravated felony. It was a result of him coming back into the country immediately following that 1993 deportation. Now, he would not have come back into the country following that deportation had it not been illegal and had he been able to pursue the relief that he was eligible for. Well, his deportation in 1993 was not illegal. It was that he was not advised of a possible avenue of relief, for which he is not a terribly strong case for 212H relief, I don't think, is it? Well, Your Honor, he didn't have to. What's the case for him? I'm sorry, Your Honor? What's the case for 212 relief? Well, I would cite Ubaldo Figuerera for the proposition that Mr. Davalos Martinez had equities at that time in 1993. Right. What were the equities? Well, his equities were that he had been in the country since he was 13 years old. He had not had any previous criminal record prior to the one immediately preceding the 1993 deportation. He was married to But he did have a criminal record. Yes, Your Honor. Okay. He was married to They could have considered the criminal record in 1993, right? He certainly could have considered that, Your Honor. And the criminal record was robbery? It was a second-degree robbery, Your Honor, yes. Okay. For which he served, I believe, one year in custody. Now, the further equities are that he was married to a U.S. citizen, and although they were not his children, he was taking care of that U.S. citizen's four children along with her. He also had a U.S. citizen's father. Now, under Ubaldo, Figueroa, and other cases, Mr. Davila-Martinez would not have been required to show that he certainly would have gotten 212H relief. The standard is that he had to show plausibility, that he could have gotten it, that he was eligible, in other words. He does not have to show that he would have gotten it. And in his declaration to the district court, he stated that, had I been advised of this potential relief, I would have pursued it, and I had these equities, I was married to a U.S. citizen, et cetera, that would have allowed me to pursue this relief. Now, he was denied that ability entirely because he was not advised of this relief. And when I refer to the 1993 deportation as illegal, what I'm saying is that it would not survive a 1326D motion had the government gone with the 1993 deportation. It would not have survived that because his due process was violated, and he was prejudiced because he could have pursued this relief, but because he was not advised, he could not. Now, the government, on appeal, now argues that the facts of the 1993 deportation did not render it illegal. They did not argue that in the district court. That is really kind of a new argument because, in the district court, the government chose to go with the mootness argument, which Your Honor pointed out, was that they said that 2002 is standalone, so we don't need the 1993 deportation. Because they made that argument and because the district court agreed with that argument, the issue of the legality of the 1993 deportation was never fleshed out. It was not developed. And now the government, on appeal, is pointing out that it was not developed, but that's only because they made the argument that it did not need to be developed. And so we would be asking for a remand in this case for an evidentiary hearing regarding the 1993 deportation because the legality of that deportation does affect the legality of the 2002 deportation. And I'd like to get to that point next. The 2002 deportation was affected by the 1993 because, as I mentioned, it might as well be a reinstatement. Without the 93 deportation, there would not have been the 2002 deportation. So we have case law that says that a reinstatement predicated on a prior invalid deportation is also invalid. But you're making a slightly different argument. You're arguing more on a practical basis that these sequence of facts would not have occurred but for the assumed invalidity, invalid 1993 deportation. Yes, Your Honor. Do you have a case that stands for that proposition? Your Honor, as we stated in our opening brief, there is no case law from the Ninth Circuit that is directly on point in that regard. So we cannot cite to a case that says, even though it's not a reinstatement, if logically this would not have happened, if this had not happened, then the second deportation is illegal. I do not have a case for the court directly on point. It's more of a logical argument, Your Honor. Well, if you're right that the 1993 removal order was somehow defective, could he have challenged that abroad? So in other words, would he have had to reenter in order to challenge the deficiencies of the 1993 order? Had to reenter after he was deported? Because your argument is akin to the fact that, well, if you hadn't violated my due process rights in that 93 hearing and deported me, I wouldn't have had to reenter in the first place. But then my question to you is, did he have to reenter in order to challenge the deficiencies of the 1993 proceedings? Couldn't he have done it abroad if he thought there was something wrong with it? It's like saying, well, you forced me to commit another crime because you did something wrong during that prior proceeding. Well, I'm not sure that he would have been able to challenge the legality of that deportation. He may have been able to have been filed for relief to come into the United States, but I believe the 1993 deportation would still have stood. So he would still have that on his record, and that still would have been used in a criminal prosecution. And I see that I'm at about a minute and 45 seconds of my reserve time. Yes, I just have a point. Sorry, I hold the time at 1.43. So the brief was filed by Attorney Martha Hall? Yes, Your Honor. Are you associated? I'm associated with Ms. Hall, yes, Your Honor. Okay. All right. Thank you. May it please the Court, Assistant United States Attorney Seth Askins for the United States in this matter. Turning first to the appellant's 2002 deportation order, as the appellant candidly admits, there is no case law supporting his argument that any defect in his 1993 deportation renders invalid his 2002 deportation order, which was entered following a separate hearing before an immigration judge by a different immigration judge on a separate basis entirely. Because there's no case law in point, he attempts to analogize his situation to that presented to this Court in Arias-Ordonez. However, Arias-Ordonez stands for the very logical proposition, as you pointed out, Judge Wardlaw, that where a removal order is invalid, any reinstatement of that removal order is also invalid. That's a very simple, clean, direct proposition. In assessing the validity of a reinstatement of a removal order, this Court need only look to the validity of the original removal order. That stands in direct contrast to what the appellant is arguing in this case, which would require this Court to engage in fortune-telling as to what might have happened had he been advised of 212-H relief in 1993. Do you think the plausibility standard that we set in Muldo-Figueroa still applies here? I think it does, Your Honor, but I think there are questions regarding that 1993 deportation before we even get to the plausibility standard. And that is his eligible case. The plausibility standard simply goes to whether he should have been, whether he had a plausible case for 212-H relief, which then goes to whether it was a denial of his due process rights in 1993 when he was not advised of that potential relief. That's correct, Your Honor. I think it applies with regards to the 1993 deportation, because that's what he's challenging. I don't think it applies with regards to the 2002 deportation, because there's no case law support for the argument that he's making, which is that we could decide it as a matter of first impression based on these facts and looking at these particular facts. And because the government filed a superseding indictment in this case, the 1993 issue wasn't fully fleshed out. So if we were to send this back and have a remand on the question of whether the 1993 deportation was valid, and it turned out that it was a denial of his due process rights, so it was invalid, and then if we were to narrowly look at the facts of this case, it is fairly analogous, because, I mean, in this case, I'm just assuming that the 1993 is ineffective. He actually was deported and came right back in the same day. And it seems so factually intertwined. And the 2002 is based on his return that same day. So in this case, it seems so – I don't know what that is either. It just – I mean, on the facts of this case, I think, you know, given that you have somewhat of a sympathetic defendant here, on the facts of this case, the 2002 deportation does seem – it's hard to continue with this loud noise behind us. But anyway, so what I'm getting to is that factually in this case it does seem logical, but we don't even know whether the 1993 was ineffective due to a due process violation. That's correct, Your Honor. And the Court certainly could remand this for a finding on the 1993 deportation. But our position is that regardless of what happened with the 1993 deportation, there's no way for this Court to know what would have happened after that, even had he been advised of it. But we know what did happen. So, you know, that's what I'm saying. It's just a – it's a question. There's some appeal to this argument in this case because we know what happened. We do know what happened, Your Honor, but we don't know what didn't happen, which is had he been advised of 212H relief, assuming for the moment that he was eligible, which is a separate issue, this Court doesn't know that he would have been granted a waiver. This Court doesn't know that he would have been able to adjust status. This Court doesn't know that between 1993 and – or in 2002, he wouldn't have then decided to commit the crime that led to the second deportation hearing in 2002. And going even further, this Court doesn't know that had he been granted status in 1993, he would have maintained that status all the way from 1993 until the date of the present offense, which was November 18th, 2010. And the government would submit that likely he would not have in light of his criminal history in this case. I would also respectfully disagree with the Court's representation that this is an issue of first blush for this Court. I believe it is a well-settled principle that someone who is deported on the basis of entering without inspection, that that is a wholly independent basis for deportation. And as is evident from the notice to appear that's located at page 51 of the excerpts of record, that was indeed the basis for the 2002 deportation. And there are at least two cases from this Court. Hernandez-Almanza, which is located at 547F2-100. It's a 1990 decision. And Sotelo-Mondragon, 653F2-1254. It's a 1980 decision where this Court states that it's settled law that a removal on the ground that an alien entered without inspection is unaffected by the legality of any prior removal. And that's exactly what we have here because that was the basis for the 2002 removal. So even assuming there was a problem with the 1993 removal, under this Court's case law, that wouldn't impact the 2002 removal. Turning very briefly to the merits of the challenge to the 1993 deportation, it's clear that it is the appellant's burden to show both a due process violation Right. But given the procedural posture of this case, it's kind of unfair to go down that alley now, given that the government withdrew the indictment based on the 1993. And so what was then in the district court decided, 1993 deportation wasn't relevant, so we're going to not look at it. So there was no, after you changed the position, which was curious in and of itself, it's not really fair to hold the defendant to that high burden when he didn't have the opportunity. I would respectfully disagree with that, Your Honor, because, in fact, the argument that's being made by the defendant is not just a challenge to the 1993 deportation. The 1993 deportation, under his argument, is a vessel to attack the 2002 deportation. And that's what's at issue, and that's why he moved to dismiss the superseding indictment, not just the first indictment as well. And it's clearly the appellant's burden to show a defect in that 1993 deportation in order to take that first step and then move on under his argument, which the government does not believe has merit. Well, is it a defect to fail to advise him of the possibility of 212 relief? That's what he alleges, Your Honor. But despite the fact that he was provided with the audio from the 1993 deportation as well as all of the immigration documents related to the 1993 deportation, he's presented none of that to this Court. He presented none of it to the district court below. And he's presented nothing to show what actually transpired at that 1993 deportation hearing such that this Court can even advise or can determine, one, whether he was or was not advised of 212H relief, and, two, whether or not he should have been advised. Have you reviewed any of that? I have reviewed that, Your Honor. And so can you tell us, was he advised? I can't. Well, I can tell you he was not advised, but I can tell you that the primary reason he was not advised was he was not eligible for relief. As this Court knows, under Section 212H, there are only five very narrow bases of criminal inadmissibility which are waived for Section 212H relief. Those are a crime involving moral turpitude, a conviction of two or more offenses with an aggregate sentence of five years or more, prostitution or any other unlawful commercial vice, certain aliens who are involved in serious criminal activity and claim immunity from prosecution, and a single offense of simple possession of 30 grams or less. The appellant felt that the district court felled here to establish how he falls into one of those five categories. And, in fact, he cannot establish it. It wasn't presented to the district court or to this Court, but the notice to appear or, I'm sorry, the order to show cause which was issued to him in January of 1993 and which was provided to him in discovery didn't allege one of those five bases. It alleged that he had entered without inspection. That is clearly not one of the five bases listed in 212H. And as Your Honor pointed out in the opinion in the Ramos case in 2010, aliens who are removed simply for illegal presence in the United States are statutorily ineligible for relief under Section 212H. That's Ramos 623F3-672. Therefore, he was not even eligible and should not have been advised, and there was no defect in that, in the 1993 deportation. And thus, even if it were a valid theory, no impact on the 2002 removal. If the Court has no further questions, I'll submit. Okay. Thank you. Andrew Bettle, Your Honors. I would like to start out with the Arias-Ordonez case that the government just mentioned. And in that case, which does deal with reinstatement, admittedly, but the logic remains the same for the facts of this case. And in Arias-Ordonez, the Court approved of the language from the lower court  And once you remove the first card, the rest of the house falls. And that is really what's going on here. I know there's been some talk of the legality of the 1993 deportation, as I mentioned, that was not developed in the district court because of the government's argument and the district court's agreement with that argument. So, really, we don't know right now, although the government tries to argue, we don't know right now whether or not Mr. Davalos Martinez would have been eligible for 212H relief in 1993. But isn't that going to be your burden? I ask the government this question about Ubaldo Figueroa because the standard from Ubaldo Figueroa is he just has to have a plausibility of relief. But that's where it's critical that there be a connection, a direct connection, between 1993 and 2002. That is, in our cases, if the 2002 deportation had rested on the 1993 order, then we could say, look, the first one was infirm. And you don't get to build that house of cards off of this. But you're now here on a slightly different process in which the government is not resting on the 1993. And so I think maybe you've got to prove something more than simply Ubaldo Figueroa's plausibility of relief. I think you've got to show that you probably, that you most likely would have gotten some kind of relief under 212. Well, I respectfully disagree that the standard would change as to the 1993 deportation. And I would also point out that the 2002 really functioned as a reinstatement of the 1993 because the facts are, in 1993, he was not advised of potential relief, he was deported, and he came in that same day. Yeah, but nobody in 2002, when they stopped him, said, oh, you've got an order against you, but it goes back to 1993. This is an easy case, right? It doesn't really rest on that. You're making a new leap, and it's a very interesting argument that you're making, okay? It's far from a trivial argument. But it is an extension of what we've done in the past. I'm just wondering whether that Ubaldo Figueroa piece is really the right piece to put in a situation like this. Well, Your Honor, I would not characterize it as a leap. I would characterize it as a logical connection. And although there was no explicit reference to the 93 deportation in 2002, really but for that 93 deportation is our argument. But that means that he could just come and go whenever he wants just because he didn't get a 2012 advisory in 1993, and that would be your contention, right? He was entitled to come back into the United States. He should have walked across the border right through the border station instead, right? Well, due to the illegality of the 93 deportation, yes, the – But your argument basically is he could have crossed at Otay Mesa, and when he got stopped by the border guard said, look, I've got a 1990 – I'm eligible for 2012 age relief. Well, not in an immigration context, Your Honor, but in a criminal context is what I'm arguing. So, no, he could not have crossed the border and been allowed in an immigration sense to re-enter the country. But he did enter. He was arrested. And that 93 deportation, although not explicitly, was implicitly being used in 2002 for that deportation. And I see that my time is up. I had one. If Judge Bartolau is fine with that. Counsel made the argument that substantively there's no showing that he was eligible for 212 age relief. Do you have any response to that other than, well, the record is such that we may not know? Do you have any specific indications from the record that you can share with us showing that he would have been eligible for 212 age relief? Well, the indications are the factors in equity that I cited earlier, being that he did have a U.S. citizen wife. He was caring for her U.S. citizen children. He did have a U.S. citizen father. He had been in this country since he was 13 years old. And so the argument is that he does not have to show for certain because, you know, this is a discretionary statute. He does not have to show for certain. He only showed that there's a plausibility that he was eligible for this relief. And I believe with those factors in equity, he would have shown that had the record been sufficiently developed in the lower court. I'm curious about the U.S. citizen father. Why wouldn't he be a derivative citizen based on that? Your Honor, I am not able to say right now why. He would not be a derivative citizen. I assume that was pursued by previous counsel. Okay. All right. Thank you, counsel. Lewis v. DeVos, Martinez is submitted.
judges: Wardlaw, Bybee, Nguyen